**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **ANGELA RUSH, Individually, and on Behalf of All Others Similarly Situated,** ) | |
| ) | |
| **Plaintiff,** ) | **Case No. 18-cv-7893** |
| ) | |
| **v.** ) | |
| ) | |
| **ELDORADO RESORTS, INC., MGM ELGIN SUB, INC., ILLINOIS RBG, LLC, and ELGIN RIVERBOAT RESORT – RIVERBOAT CASINO d/b/a GRAND VICTORIA RIVERBOAT CASINO,** ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| ) | |
| **Defendants.** ) | |
| ) | |

**COLLECTIVE AND CLASS ACTION COMPLAINT**

Plaintiff Angela Rush ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, brings this collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and class action under Federal Rule of Civil Procedure 23 and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1, *et seq.*, against Eldorado Resorts, Inc., MGM Elgin Sub, Inc., Illinois RBG, LLC, and Elgin Riverboat Resort – Riverboat Casino d/b/a Grand Victoria Riverboat Casino (collectively, "Defendants"), and alleges upon personal belief as to herself and her own acts, and as for all other matters, upon information and belief, and based upon the investigation made by her counsel, as follows:

**INTRODUCTION**

1. Plaintiff was employed by Defendants as a non-exempt, hourly paid, tipped dealer for over two decades. Defendants paid Plaintiff and similarly situated tipped employees sub-minimum hourly wages under the tip-credit provisions of the FLSA and IMWL. These provisions permit

employers of "tipped employees" to pay wages of less than the minimum wage, provided employers comply with all other requirements of the tip-credit provisions.

2.     This action arises out of Defendants' systematic violations of the FLSA and IMWL with regard to Plaintiff and other similarly situated tipped employees. Specifically, Defendants violated the FLSA and IMWL by (1) failing to pay tipped employees at the correct overtime rate for all hours worked in excess forty hours per workweek; (2) requiring tipped employees to participate in a mandatory, involuntary and invalid tip pool that included non-tipped supervisors; and (3) failing to pay tipped employees for meetings, training classes, auditions, and other work.

3.     This action seeks to remedy Defendants' illegal practices, whereby Defendants deliberately and uniformly deprived Plaintiff and similarly-situated tipped employees of earned minimum wages, overtime wages, and all tips received[1] in violation of the FLSA and IMWL.

## JURISDICTION AND VENUE

4.     This Court has subject-matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction." Plaintiff has signed an opt-in consent form to join this lawsuit. *See* Exhibit A.

5.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the FLSA.

6.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

---

[1]     On March 23, 2018, the FLSA was amended pursuant to the Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, Div. S., Tit. XII, § 1201, to provide for recovery of all tips unlawfully kept by the employer, in addition to an equal amount in liquidated damages. *See* U.S. Dept. of Labor, Wage & Hour Division, Field Assistance Bulletin No. 2018-3 (Apr. 6, 2018), *available at* https://www.dol.gov/whd/FieldBulletins/fab2018_3.pdf.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because Defendants reside in this District and conduct business within it. In addition, a substantial part of the events and omissions giving rise to the claims pleaded in this Complaint occurred within this District.

## THE PARTIES

8.     Plaintiff Angela Rush is an adult citizen and resident of Illinois who worked as a non-exempt, hourly paid, tipped dealer for Defendants at their casino located at 250 South Grove Avenue, Elgin, Illinois, from September 1994 to October 1996 and from April 1997 to October 15, 2018.

9.     Plaintiff, like those she seeks to represent, was a "tipped employee" of Defendants as defined by the FLSA, 29 U.S.C. § 203(t) and by the IMWL, 820 ILCS 105/3(b) and (d).

10.    At all relevant times, Defendant Elgin Riverboat Resort – Riverboat Casino, d/b/a Grand Victoria Riverboat Casino ("Grand Victoria") has been a state-licensed gambling facility located at 250 South Grove Avenue, Elgin, Illinois.

11.    At all relevant times, Defendant MGM Elgin Sub, Inc. ("MGM Elgin") has been a Nevada corporation with its principal place of business at 6385 South Rainbow Blvd., Ste. 500, Las Vegas, NV.

12.    At all relevant times, Defendant Illinois RBG, LLC ("Illinois RBG") has been an Illinois limited liability company organized under, and governed by, Illinois law, and a citizen of Illinois with its principal place of business at 150 N Riverside Plaza, Ste. 3300, Chicago, IL.

13.    At all relevant times, Eldorado Resorts, Inc. ("Eldorado") has been a Nevada corporation with its principal place of business at 100 W. Liberty St., Ste. 1150, Reno, NV. Eldorado owns and operates twenty-eight casino and resort properties throughout the United States in Nevada,

New Jersey, Iowa, Colorado, Missouri, Florida, Louisiana, Illinois, Ohio, Indiana, Mississippi, West Virginia, and Pennsylvania.

14.     On August 7, 2018, Eldorado acquired Grand Victoria from its previous owners, MGM Elgin and Illinois RBG.[2]

15.     From the beginning of the limitations period until August 7, 2018, Grand Victoria, MGM Elgin and Illinois RBG together were a single common "enterprise" as defined by the FLSA, 29 U.S.C. § 203(r)(1), engaged in related activities, under unified operation and common control, with a common business purpose, and with an annual gross volume of sales or business revenue of at least $500,000.00.

16.     Prior to August 7, 2018, MGM Elgin and Illinois RBG had the authority and exerted operational control over the terms and conditions of employment of the employees of Grand Victoria, including the authority to direct and supervise the work of employees, including Plaintiff and the individuals she seeks to represent in this case, and the authority to make decisions regarding wage and hour classifications, including the decisions to utilize a tip credit and tip pool for Plaintiff and other similarly-situated employees, employee compensation, and capital expenditures.

17.     Prior to August 7, 2018, MGM Elgin and Illinois RBG acted and had responsibility in devising, directing, implementing and supervising the wages and hour practices and policies relating to employees, including the decisions: (1) not to pay Plaintiff and other similarly-situated employees at the correct overtime rate for all hours worked in excess of forty hours per workweek; (2) to require tipped employees to participate in a mandatory, involuntary and invalid

---

[2] *See Eldorado Resorts Completes Acquisition of Grand Victoria Casino*, Business Wire (August 7, 2018), https://www.chicagotribune.com/business/ct-biz-grand-victoria-casino-sold-20180416-story.html.

tip pool that included non-tipped supervisors; and (3) not to pay tipped employees for meetings, training classes, auditions, and other work.

18.    Since purchasing Grand Victoria from MGM Elgin and Illinois RBG on August 7, 2018, Eldorado and Grand Victoria together are a single common "enterprise" as defined by the FLSA, 29 U.S.C. § 203(r)(1), engaged in related activities, under unified operation and common control, with a common business purpose, and with an annual gross volume of sales or business revenue of at least $500,000.00.

19.    Since August 7, 2018, Eldorado has had the authority and exerted operational control over the terms and conditions of employment of the employees of Grand Victoria, including the authority to direct and supervise the work of employees, including Plaintiff and the individuals she seeks to represent in this case, and the authority to make decisions regarding wage and hour classifications, including the decisions to utilize a tip credit and tip pool for Plaintiff and other similarly-situated employees, employee compensation, and capital expenditures.

20.    Since August 7, 2018, Eldorado acted and had responsibility in devising, directing, implementing and supervising the wages and hour practices and policies relating to employees, including the decisions: (1) not to pay Plaintiff and other similarly-situated employees at the correct overtime rate for all hours worked in excess of forty hours per workweek; (2) to require tipped employees to participate in a mandatory, involuntary and invalid tip pool that included non-tipped supervisors; and (3) not to pay tipped employees for meetings, training classes, auditions, and other work.

21.    At all relevant times, each Defendant has been an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d) and the IMWL, 820 ILCS 105/3(c).

## FACTUAL ALLEGATIONS

22.     During the relevant limitations period, Plaintiff Angela Rush worked as a dealer in Grand Victoria's poker room and was paid an hourly rate of $7.00 an hour and an overtime rate of $10.50 an hour for all hours worked in excess of forty per workweek. Plaintiff's primary job duty was to deal cards, collect the bets of Grand Victoria's patrons during poker games, and distribute the pot of poker winnings.

23.     Plaintiff, and all similarly situated employees she seeks to represent, were employed by Defendants as hourly-paid, tipped employees who were subject to a tip pool. Defendants employ tipped employees in positions such as dealers, croupiers, slot attendants, security guards, and cage employees at their Elgin casino.

24.     At all relevant times, Defendants classified Plaintiff and all similarly situated tipped employees as non-exempt from the overtime requirements of the FLSA and IMWL.

25.     At all relevant times, Defendants paid Plaintiff and similarly situated tipped employees at an hourly rate minus a tip credit.

26.     Defendants directed Plaintiff and similarly situated tipped employees to work, and they routinely did work, in excess of forty hours in given workweeks, but tipped employees were not compensated for overtime wages earned at the proper overtime rate for employees subject to a tip credit.

27.     Defendants suffered and permitted Plaintiff and similarly situated tipped employees to work more than forty hours per week without proper overtime pay. For example, Defendants paid Plaintiff a sub-minimum wage hourly rate of $7.00, applying a $1.25 tip credit to the $8.25 minimum wage in Illinois. Plaintiff's minimum overtime wage was $12.38 an hour ($8.25 multiplied by 1.5). Deducting Defendants' $1.25 tip credit from the minimum overtime rate of

$12.38, Defendants should have paid Plaintiff $11.13 an hour for hours worked in excess of 40 per week. Instead, Defendants underpaid Plaintiff an overtime rate of $10.50 an hour.

28.     At all relevant times, Defendants required Plaintiff and similarly situated tipped employees to participate in a mandatory tip pool. At the end of every gaming day, tips were collected, counted, and then deposited into the casino cage and pooled according to department. Each tipped employee working that day received a share of the pooled tips based on how many hours they worked that day. Every two weeks, tipped employees received their tip distribution as part of their paychecks.

29.     When taking paid time off, Plaintiff and other similarly situated employees continued to receive tips as part of their pay. For each day of paid time off, tipped employees were treated as if they worked an eight-hour day, and would thus receive a share of the daily pooled tips representing eight hours of work.

30.     At all relevant times, Defendants employed some employees in a dual capacity. These "dual-rate" employees worked some shifts as tipped employees and other shifts as supervisors who were not entitled to, and did not receive, tips.

31.     When taking paid time off, dual-rate employees were paid entirely as tipped employees rather than as dual-rate employees. For each day a dual-rate employee took paid time off, they were distributed tips for that day as if they had worked eight hours as a tipped employee. In other words, dual-rate employees received a share in the tip pool for paid time off even when they did not work as tipped employees. This practice reduced Defendants' labor costs because it allowed Defendants to compensate dual-rate employees at the lower tipped-employee rate for paid time off rather than the higher supervisor rate – in effect requiring tipped employees to subsidize their supervisors' paid time off with their earned tips.

32.     Defendants included non-tipped supervisors in the tip pool in violation of the tip pooling and tip-credit provisions of the FLSA and IMWL.

33.     Defendants required Plaintiff and similarly situated tipped employees to attend meetings, training classes, auditions, and perform other work as part of their employment, but did not pay them for all their time spent on this mandatory work. For example, when Defendants introduced a new poker game, Pot Limit Omaha, around May 2018, employees were required to either audition for the game, demonstrating proficiency in the game to supervisors, or attend training classes for the game. Employees who opted to audition were required to arrive at 6:30 a.m. and wait for their opportunity to audition. Plaintiff arrived at 6:30 a.m., waited for her audition, auditioned, and then was instructed by supervisors to clock in to her scheduled shift at around 9:00 a.m. Plaintiff, like all of the other employees who auditioned, was not paid for any work performed before clocking in. The employees who did not attend or pass the Pot Limit Omaha audition were required to attend training classes for the game. Upon information and belief, these employees also were not paid for time spent attending these the training classes.

34.     Defendants failed to maintain true and accurate records of all the time worked by Plaintiff and similarly situated tipped employees.

35.     Defendant directed Plaintiff and similarly situated tipped employees to work, and they routinely did work, in excess of forty (40) hours in given workweeks, but they were not compensated for overtime wages earned at a rate of one and one-half times their regular rate.

36.     Defendant suffered and permitted CSMs to work more than forty (40) hours per week without overtime pay.

37.     Defendants were aware, or should have been aware, that Plaintiff and similarly situated tipped employees performed work that required payment of minimum wages and overtime wages at the proper rates of pay and all tips received.

38.     The conduct alleged above reduced Defendants' labor and payroll costs.

39.     Plaintiff and similarly situated tipped employees were uniformly subject to Defendants' employment policies and practices and were victims of Defendants' scheme to deprive them of minimum wages, overtime compensation, and all tips received. As a result of Defendants' improper and willful failure to pay Plaintiff and similarly situated tipped employees in accordance with the requirements of the FLSA and IMWL, Plaintiff and similarly-situated tipped employees suffered lost wages and other damages.

## FLSA COLLECTIVE ACTION ALLEGATIONS

40.     Plaintiff brings this collective action on behalf of herself and all others similarly situated pursuant to the FLSA, 29 U.S.C. § 216(b), to recover unpaid minimum wages, overtime compensation, tips, liquidated damages, statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages related to Defendants' violation of the FLSA.

41.     Plaintiff brings this action under the FLSA on behalf of the following collective class of similarly situated employees:

> All hourly paid, tipped employees who worked for Defendants at any time during the applicable statute of limitations period and were subject to a tip pool (the "FLSA Collective").

42.     Plaintiff is a member of the FLSA Collective she seeks to represent because she worked for Defendants as a non-exempt, hourly paid, tipped employee during the relevant period.

43.     This action is properly maintained as a collective action because the representative Plaintiff is similarly situated to the members of the FLSA Collective with respect to their compensation

plan, and are all subject to a common practice, policy, or plan in which Defendants classified and paid them as non-exempt, hourly paid tipped employees, but deprived them of minimum wages and overtime compensation at the proper rates and all tips received.

44. Defendants knew or should have known that they failed to pay members of the FLSA Collective at the correct overtime rate for all hours worked in excess forty hours per workweek.

45. Defendants knew or should have known that they required members of the FLSA Collective to participate in a mandatory, involuntary and invalid tip pool that included non-tipped supervisors.

46. Defendants knew or should have known that they failed to pay members of the FLSA Collective for meetings, training classes, auditions, and other work.

47. Defendants' conduct, as alleged herein, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255.

48. Defendants are liable under the FLSA for failing to properly compensate members of the FLSA Collective. Plaintiff requests that the Court authorize notice to the members of the FLSA Collective to inform them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. §216(b), for the purpose of seeking unpaid minimum wages, overtime compensation, all tips received, liquidated damages under the FLSA, and the other relief requested herein.

49. Upon information and belief, Plaintiff estimates there are several hundred similarly situated current and former members of the FLSA Collective who would benefit from the issuance of court-supervised notice and an opportunity to join the present action if they choose.

50. The precise number of members of the FLSA Collective can be easily ascertained by using Defendants' payroll and personnel records. Given the composition and size of the class, members

of the FLSA Collective may be informed of the pendency of this action directly via U.S. mail, email, and otherwise.

51.     Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Plaintiff and members of the FLSA Collective.

## IMWL CLASS ACTION ALLEGATIONS

52.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), Plaintiff brings claims for relief on her own behalf and as a representative of a class under the IMWL, 820 ILCS 105/1, *et seq.*, to recover unpaid minimum wages, unpaid overtime compensation, unlawfully withheld wages, statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages related to Defendants' violation of the IMWL.

53.     Plaintiff seeks class certification under Rule 23 for the following class under the IMWL:

> All hourly paid, tipped employees who worked for Defendants in Illinois at any time from three (3) years prior to the filing of this action to the entry of judgment and who were subject to a tip pool (the "IMWL Class").

54.     This action is properly maintained as a class action under Rule 23(a) and Rule 23(b) because:

    a.   The IMWL Class is so numerous that joinder of all members is impracticable;

    b.   There are questions of law or fact that are common to the IMWL Class;

    c.   The claims of Plaintiff are typical of the claims of the IMWL Class; and

    d.   Plaintiff will fairly and adequately protect the interests of the IMWL Class.

## Numerosity

55.     Upon information and belief, Plaintiff estimates that the total number of putative IMWL Class members represents several hundred individuals. The precise number of IMWL Class

11

members can be easily ascertained using Defendants' personnel and payroll records and other records.

## Commonality

56.    There are numerous and substantial questions of law and fact common to the IMWL Class members, including, without limitation, the following:

> a.    Whether Defendants failed to pay the members of the IMWL Class proper overtime compensation for hours worked in excess of forty hours per workweek as required by the IMWL;
>
> b.    Whether Defendants required members of the IMWL Class to participate in a mandatory, involuntary and invalid tip pool that included non-tipped supervisors;
>
> c.    Whether Defendants failed to pay members of the IMWL Class for meetings, training classes, auditions, and other work;
>
> d.    Whether Defendants failed to keep true and accurate records of the amount of time the members of the IMWL Class actually worked;
>
> e.    Whether Defendants willfully or recklessly disregarded the law in implementing its wage and hour policies applicable to the IMWL Class; and,
>
> f.    The nature and extent of the class-wide injury and the appropriate measure of damages for the IMWL Class.

57.    Plaintiff anticipates that Defendants will raise defenses that are common to the IMWL Class.

## Typicality

58.    The claims asserted by the Plaintiff are typical of the IMWL Class members she seeks to represent. The Plaintiff has the same interests and suffers from the same unlawful practices as the IMWL Class members.

59.    Upon information and belief, there are no other IMWL Class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation

against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to Rule 23.

## Adequacy

60.     Plaintiff will fairly and adequately protect the interests of all members of the IMWL Class, and there are no known conflicts of interest between Plaintiff and IMWL Class members. Plaintiff, moreover, has retained experienced counsel who are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel specifically in wage and hour litigation.

## Common Questions of Law and Fact Predominate and a Class Action is Superior to Joinder of Claims or Individual Lawsuits

61.     The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members.

62.     A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member may be relatively small, the expenses and burden of individual litigation would make it difficult for each class member to bring individual claims.

63.     On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or

13

substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to, fashion methods to efficiently manage this action as a class action.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
### (Unpaid Overtime Wages – Incorrect Overtime Rate)

64.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

65.    Defendants are subject to the overtime pay requirements of the FLSA because they are or were enterprises as defined by the FLSA, 29 U.S.C. § 203(r)(1), and are engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

66.    Upon information and belief, the gross annual volume of sales made or business done by Defendants for the years 2015 to the present was not less than $500,000.00.

67.    Plaintiff and the members of the FLSA Collective are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. § 216(b).

68.    At all relevant times, Plaintiff and members of the FLSA Class have been entitled to the rights, benefits, and protections granted by the FLSA, 29 U.S.C. § 207, *et seq*.

69.    The FLSA allows employers to pay less than minimum wage to employees who receive tips. 29 U.S.C. 203(m). In doing so, an employer may take a "tip credit," which allows employers to include in their calculation of tipped employees' wages an amount that an employee receives in tips. *Id*.

70.    Where employers apply a tip credit, they must factor that tip credit into an employee's overtime rate. 29 U.S.C. 207(a)(1). Simply paying time and a half an employees' sub-minimum

wage rate violates the FLSA; employers must pay the minimum overtime rate minus the tip credit applied. *See id.*

71.     Throughout the relevant period, Defendants violated the FLSA by routinely suffering or permitting Plaintiff and the members of the FLSA Collective to work overtime hours without paying them the minimum overtime rate minus the tip credit applied.

72.     Plaintiff and the members of the FLSA Collective are not subject to any exemption.

73.     Defendants' violations of the FLSA, as described herein, have been willful and intentional. Defendants failed to make a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and members of the FLSA Collective.

74.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

75.     Plaintiff and members of the FLSA Collective have been harmed as a direct and proximate result of Defendants' unlawful conduct because they have been deprived of overtime wages owed for time worked in excess of forty (40) hours per week from which Defendants derived a direct and substantial benefit.

76.     As a result of the unlawful acts of Defendants, Plaintiff and members of the FLSA Collective have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. § 216(b).

## COUNT II
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
### (Unpaid Minimum Wages and Tips – Invalid Tip Pool)

77.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

78.     In order to apply a tip credit toward an employee's minimum wage under the FLSA, an employer must satisfy several conditions, including: (1) the employer must inform the employee that it will take a tip credit; and, (2) tipped employees must retain all the tips they receive, except those tips included in a valid tipping pool among employees who customarily and regularly receive tips. 29 U.S.C. 203(m).

79.     Defendants utilized the FLSA tip-credit provision and required Plaintiff and the members of the FLSA Collective to participate in a mandatory tip pool.

80.     At all relevant times, Defendants distributed a portion of the tip pool to dual-rate employees taking paid time off, regardless of whether they had worked in a non-tipped capacity as a supervisor during that workweek.

81.     As a result of Defendants' improper use of the tip-credit provisions of the FLSA, Defendants compensated Plaintiff and the members of the FLSA Collective based on an incorrectly sub-minimum wage rate of pay and denied them all tips received.

82.     Defendants' violations of the FLSA, as described herein, have been willful and intentional. Defendants failed to make a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and members of the FLSA Collective.

83.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

84.     Plaintiff and members of the FLSA Collective have been harmed as a direct and proximate result of Defendants' unlawful conduct because they have been deprived of minimum wages owed for time worked and all tips received.

85.     As a result of the unlawful acts of Defendants, Plaintiff and members of the FLSA Collective have been deprived of minimum wages in amounts to be determined at trial, and are

entitled to recovery of such amounts, all tips unlawfully withheld, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. § 216(b).

**COUNT III**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**(Unpaid Minimum and Overtime Wages – Unpaid Time Worked)**

86.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

87.     Defendants required Plaintiff and members of the FLSA Collective to perform several tasks off the clock, such as attending meetings, training classes, auditions, and other work. Defendants failed to pay these employees the applicable minimum and overtime wages for this time worked in violation of the FLSA, 29 U.S.C. § 206 and 207.

88.     Defendants failed to create or maintain accurate records of the time Plaintiff and the members of the FLSA Collective worked in violation of the FLSA, 29 U.S.C. § 211(c).

89.     Defendants' failure to pay Plaintiff and the members of the FLSA Collective for all hours worked caused their regular rate for given workweeks to fall below the statutory minimum wage in violation of the FLSA, 29 U.S.C. § 206.

90.     Defendants' failure to pay Plaintiff and the members of the FLSA Collective for all hours worked caused them to work in excess of forty (40) hours in given workweeks without pay at an overtime premium of one and one-half times their regular hourly rate for those additional hours in violation of the FLSA, 29 U.S.C. § 207.

91.     Throughout the relevant period, Defendants violated the FLSA by routinely suffering or permitting Plaintiff and members of the FLSA Collective to work hours without paying them proper minimum wage and/or overtime compensation.

92.     Defendants' violations of the FLSA, as described herein, have been willful and intentional.

Defendants failed to make a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and members of the FLSA Collective.

93.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

94.    Plaintiff and members of the FLSA Collective have been harmed as a direct and proximate result of Defendants' unlawful conduct because they have been deprived of minimum and overtime wages owed for time worked without any compensation.

95.    As a result of the unlawful acts of Defendants, Plaintiff and members of the FLSA Collective have been deprived of minimum and overtime wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. § 216(b).

## COUNT IV
## VIOLATION OF THE ILLINOIS MINIMUM WAGE LAW
### (Unpaid Overtime Wages – Incorrect Overtime Rate)

96.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

97.    Plaintiff is a member of a class that meets the requirements for certification and maintenance of a class action pursuant to Rule 23.

98.    Section 105/4(a) of the IMWL requires employers to pay employees one and one-half times their regular rate for all hours worked over forty (40) per workweek. Section 105/12 of the IMWL provides that employers who violate the provisions of the act are liable to affected employees for unpaid wages, costs, attorney's fees, damages of 2% of the amount of any such underpayment for each month following the date of underpayments, and other appropriate relief.

99.    Throughout the relevant period, Plaintiff and the IMWL Class members worked in excess

of forty (40) hours per week, but were not paid the correct overtime premium for those additional hours.

100.     Defendants required, suffered or permitted Plaintiff and the IMWL Class members to work in excess of forty (40) hours per week without paying the statutorily required overtime compensation.

101.     Plaintiff and the IMWL Class members are not subject to any exemption.

102.     As a result of Defendants' violations of the IMWL, Plaintiff and the IMWL Class members have suffered and will continue to suffer a loss of income and other damages.

103.     As a result of Defendants' unlawful conduct, they are liable to Plaintiff and the IMWL Class members for actual damages, statutory damages, and equitable relief, as well as reasonable attorneys' fees, costs, and expenses.

**COUNT V**
**VIOLATION OF THE ILLINOIS MINIMUM WAGE LAW**
**(Unpaid Minimum Wages – Invalid Tip Pool)**

104.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

105.     Section 105/4(c) of the IMWL allows employers to apply a tip credit toward the minimum wage of any employee "engaged in an occupation in which gratuities have customarily and usually constituted and have been recognized as part of the remuneration" of that employee.

106.     Defendants utilized the IMWL tip-credit provision and required Plaintiff and the members of the IMWL Class to participate in a mandatory tip pool.

107.     At all relevant times, Defendants distributed a portion of the tip pool to dual-rate employees taking paid time off, regardless of whether they had worked in a non-tipped capacity as a supervisor during that workweek.

108.    As a result of Defendants improper use of the tip-credit provision, Defendants compensated Plaintiff and members of the IMWL Class based on an incorrectly sub-minimum wage regular rate of pay.

109.    As a result of Defendants' violations of the IMWL, Plaintiff and the IMWL Class members have suffered and will continue to suffer a loss of income and other damages.

110.    As a result of Defendants' unlawful conduct, they are liable to Plaintiff and the IMWL Class members for actual damages, statutory damages, and equitable relief, as well as reasonable attorneys' fees, costs, and expenses.

<u>COUNT VI</u>
**VIOLATION OF THE ILLINOIS MINIMUM WAGE LAW**
**(Unpaid Minimum and Overtime Wages - Unpaid Time Worked)**

111.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

112.    Defendants required Plaintiff and members of the IMWL Class to perform several tasks off the clock, such as attending meetings, training classes, auditions, and other work. Defendants failed to pay these employees the applicable minimum and overtime wages for this time worked in violation of the Section 105/4 and 4a of the IMWL.

113.    Defendants failed to create or maintain accurate records of the time Plaintiff and the IMWL Class members worked in violation of the IMWL, 820 ILCS 105/8.

114.    Defendants' failure to pay Plaintiff and the and the IMWL Class members for all hours worked caused their regular rate for given workweeks to fall below the statutory minimum wage in violation of the IMWL, 820 ILCS 105/4.

115.    Defendants' failure to pay Plaintiff and the IMWL Class members for all hours worked caused them to work in excess of forty (40) hours in given workweeks without pay at an overtime

premium of one and one-half times their regular hourly rate for those additional hours in violation of the IMWL, 820 ILCS 105/4a.

116.    Throughout the relevant period, Defendants violated the FLSA by routinely suffering or permitting Plaintiff and the IMWL Class members to work hours without paying them proper minimum wage and/or overtime compensation.

117.    As a result of Defendants' violations of the IMWL, Plaintiff and the IMWL Class members have suffered and will continue to suffer a loss of income and other damages.

118.    As a result of Defendants' unlawful conduct, they are liable to Plaintiff and the IMWL Class members for actual damages, statutory damages, and equitable relief, as well as reasonable attorneys' fees, costs, and expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Angela Rush, individually and on behalf of all others similarly situated, by and through her attorneys, demands judgment against Defendants and each of them, jointly and severally, and in favor of Plaintiff and all others similarly situated, for a sum that will properly, adequately, and completely compensate them for the nature, extent, and duration of their damages, the costs of this action, and as follows:

A.      Certify a collective action under Counts I-III and designate Plaintiff as representative of all those employees similarly situated;

B.      Order Defendants to furnish to counsel a list of all names, telephone numbers, email addresses, and current (or best known) home addresses of all members of the proposed FLSA Collective;

C.      Authorize Plaintiff's counsel to issue notice at the earliest possible time informing the members of the FLSA Collective that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit;

D.      Certify a class action under Counts IV-VI;

E.   Appoint Stephan Zouras, LLP as counsel for the IMWL Class under Rule 23(g);

F.   Declare and find that the Defendants committed one or more of the following acts:

    i.   Violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*;

    ii.  Willfully violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*; and

    iii. Violated the Illinois Minimum Wage Law, 820 ILCS 105, *et seq.*

G.   Award compensatory damages, including all minimum wages, overtime pay, and unlawfully withheld tips owed, in an amount according to proof under the FLSA and IMWL;

H.   Award pre-judgment interest on all compensatory damages due;

I.   Award liquidated damages in an amount equal to the amount of unpaid minimum wages, overtime compensation, and unlawfully withheld tips found due under the FLSA;

J.   Award 2% per month interest on all compensation due accruing from the date such amounts were due until it is paid under the IMWL;

K.   Award all costs and reasonable attorney's fees incurred prosecuting these claims under the FLSA and IMWL;

L.   Grant leave to amend to add claims under applicable state and federal laws;

M.   Grant leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court; and,

N.   For such further relief as the Court deems just and equitable.

### <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury.

Dated: November 29, 2018         Respectfully Submitted,


                          /s/ *Ryan F. Stephan*

                          Ryan F. Stephan

James B. Zouras
Teresa M. Becvar
Anna M. Ceragioli
STEPHAN ZOURAS, LLP.
100 N. Riverside Plaza, Ste. 2150
Chicago, Illinois 60606
312-233-1550
312-233-1560 f
www.stephanzouras.com

**ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE COLLECTIVE AND CLASS**

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on November 29, 2018, I filed the attached with the

Clerk of the Court using the electronic filing system which will send such filing to all attorneys

of record.

<em>/s/ Ryan F. Stephan</em>